U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2022 FEB 24  PM 4: 13

CLERK

BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

PLAINTIFF E.W., by and through her
parents and natural guardians;
PLAINTIFF J.W., by and through his
parents and natural guardians; JOSEPH
WILLIAMS, individually; HEATHER
WILLIAMS, individually; and the
ROMAN CATHOLIC DIOCESE OF
BURLINGTON, VERMONT,

          *Plaintiffs,*

v.

DANIEL FRENCH, in his official capacity
as Secretary of the Vermont Agency of
Education; JEANNÉ COLLINS, in her
official capacity as Superintendent of
the Rutland Northeast Supervisory
Union; and the BARSTOW UNIFIED
UNION SCHOOL BOARD OF DIRECTORS,

          *Defendants.*

Case No. 2:22 – cv – 59

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.    In June 2020, the U.S. Supreme Court ruled that Montana's exclusion of Christian schools from a state scholarship program was unconstitutional. *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246 (2020). Writing for the Court, Chief Justice John Roberts explained that states need not subsidize private education, but once they choose to do so, they cannot disqualify some schools just because they are religious. The Supreme Court's decision was welcome news for the Williams family, who live in Chittenden, Vermont.

2.      The Williamses are Catholic and, as an exercise of their faith, send their children to Mount St. Joseph Academy (MSJ), a Catholic school owned and operated by the Diocese of Burlington, Vermont. Although their town's school district provides a tuition benefit for families to use at a school of their choice, the Williamses could not participate.

3.      The Williamses were barred from the benefit because—for more than two decades—Vermont has engaged in unconstitutional religious discrimination by denying students and their families equal access to a public benefit solely because they choose religious schools.

4.      In Vermont, every town's school district has the responsibility to provide an education for resident children. Some, like Barstow Unified Union School District ("Barstow") where the Williamses live, meet this obligation by giving families a tuition benefit to use at a private school of the family's choice. But since 1999, Vermont school districts have regularly denied benefits to families when they chose religious schools.

5.      After *Espinoza*, Heather Williams wrote to her school district, informed them of the Supreme Court's decision, and requested that they provide her family the same tuition benefit that her neighbors receive. But the district denied her request.

6.      Instead, the school superintendent, Defendant Jeanné Collins, explained that the school consulted with the office of Defendant French and was instructed that the U.S. Supreme Court's ruling did not apply to Vermont.

7.      Like Barstow, other school districts denied tuition requests to religious schools outright after *Espinoza* and the affected families turned to this Court for help. In January 2021, this Court, citing *Espinoza*, correctly ruled those denials unconstitutional. *A.H. by & through Hester v. French*, 511 F. Supp. 3d 482, 488 (D. Vt. 2021). In June, the U.S. Court of Appeals for the Second Circuit explained that the school districts' denials violated the U.S. Constitution and that the denied

2

families were entitled to relief in federal court. *In re A.H.*, 999 F.3d 98, 100 (2d Cir. 2021).

8.      In the wake of those rulings, Heather Williams contacted her district again, requesting the tuition benefit for both the 2020–21 and 2021–22 school years. And MSJ invoiced the school district for the Williams children's tuition.

9.      But when the district learned about these rulings, it instead looked to eliminate school choice for private schools altogether—a plan it abandoned only after public backlash.

10.     The district also told the Williamses that it did not know whether it was possible to honor their request because MSJ "teaches every academic subject from a Christian perspective."

11.     Following Defendant French's lead, the district explained that it would only honor their request if they provided a "certification" from MSJ.

12.     The certification required the school to account for its religious activities by a percentage (so the district can accordingly reduce the Williamses' tuition benefit) or to agree to limit the use of the tuition benefit to cover secular activities only.

13.     Ultimately, the district rejected the Williamses' 2020–21 tuition request entirely.

14.     And for the 2021–22 school year, the district declined to pay the full invoiced tuition, and instead only agreed to pay the subsidized tuition rate available to families who pay out-of-pocket.

15.     The district also reserved the right to reduce or claw back their award to account for MSJ's religious activities or any scholarships that the school provides.

16.     Defendants' actions violate the First Amendment rights of the Williamses and their school. The government violates the Free Exercise Clause when it fails to meet the minimum requirement of neutrality to religion. And here,

3

Defendants' behavior exhibits a remarkable hostility to religion requiring this Court's intervention.

## JURISDICTION AND VENUE

17.   This action arises under the United States Constitution and federal law, particularly 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

18.   This Court is vested with authority to grant the requested declaratory judgment by operation of 28 U.S.C. § 2201, *et seq*.

19.   This Court has jurisdiction to award the requested injunctive relief under 28 U.S.C. § 1343.

20.   This Court has jurisdiction to award nominal and compensatory damages under 42 U.S.C. § 1983, 28 U.S.C. § 1983, and 28 U.S.C. § 1343.

21.   This Court has jurisdiction to award reasonable costs and attorneys' fees under 42 U.S.C. § 1988.

22.   Venue is proper in the United States District Court for the District of Vermont under 28 U.S.C. § 1391(b), because Defendants reside in the District of Vermont and the events giving rise to the claims occurred here.

## PARTIES

23.   Plaintiff E.W., a minor child, is a sophomore at Mount St. Joseph. She sues by and through her parents and natural guardians, Plaintiffs Joseph and Heather Williams.

24.   Plaintiff J.W. is a senior at Mount St. Joseph. He sues by and through his parents and natural guardians, Plaintiffs Joseph and Heather Williams.

25.   Joseph Williams is the father of Plaintiffs E.W. and J.W. He sues on behalf of himself and his children.

4

26.     Heather Williams is the mother of Plaintiffs E.W. and J.W. She sues on behalf of herself and her children.

27.     The Williams family resides in Chittenden, Vermont. They live in a school district governed by the Barstow Unified Union School Board and the Rutland Northeast Supervisory Union.

28.     Plaintiff Roman Catholic Diocese of Burlington, Vermont ("the Diocese"), owns and operates Mount St. Joseph Academy ("Mount St. Joseph" or "MSJ"), a religious secondary school in Rutland, Vermont.

29.     The Diocese sues on behalf of itself and on behalf of families who both are eligible to receive town tuition benefits and who wish to attend Mount St. Joseph but cannot without the tuition benefit.

30.     Defendant Daniel French is the Secretary of the Vermont Agency of Education.

31.     Defendant French and his Agency have directed school districts not to honor tuition requests to diocesan and other religious schools and have issued policies directing school districts to penalize students, their families, and religious schools due to the schools' religious activities.

32.     Defendant French, his Deputy Secretary and his Agency directed the defendant districts that the Free Exercise Clause protections described in *Espinoza* do not apply to Vermont.

33.     Defendant Barstow Unified Union School Board of Directors ("Barstow School Board" or "the School Board") is a local governmental entity under Vermont law. 16 V.S.A. §§ 421, 423(a).

34.     Barstow School Board bears the responsibility for providing an education for children who live within its district. 16 V.S.A. § 822(a)(1).

5

35.    The School Board denied the Williamses' 2020–21 tuition request because MSJ is a religious school with a curriculum taught "from a Christian perspective."

36.    Defendant Jeanné Collins is the Rutland Northeast Supervisory Union Superintendent, who implements the policies of Barstow School Board. 16 V.S.A. § 242. Defendant Collins and School Board are collectively "the School Defendants."

37.    Superintendent Collins told the Barstow School Board to deny the Williamses' tuition request because MSJ is religious and enforced the Board's decision to deny the request.

## STATEMENT OF FACTS

### A. The Town Tuition Program

#### 1. Program Basics

38.    In Vermont, each town's school district has a school board responsible for its educational duties. 16 V.S.A. §§ 421, 423(a).

39.    With approval of the Vermont State Board of Education, towns may join to establish "supervisory unions," which provide collective administrative support for the districts' educational systems. 16 V.S.A. § 261, *et seq.*

40.    The State of Vermont has had a Town Tuition Program since 1869, *see* ~~https://www.ed..., Evolution in the understanding of the current tuition program~~, which provides a tuition benefit for students who live in towns without public schools, 16 V.S.A. § 821, *et seq.*

41.    Under Vermont law, school districts bear the responsibility to provide education for resident children. 16 V.S.A. § 821.

42.    State statute, 16 V.S.A. § 822, provides that school districts must either maintain their own high school or "provide for the high school education of its students by paying tuition to a public high school, an approved independent high

school, or an independent school meeting education quality standards, to be selected by the parents or guardians of the student, within or outside the State."

43.     Towns that pay tuition for their students instead of maintaining a public high school are called "sending towns."

44.     Under the Town Tuition Program, sending towns' school districts "shall pay the full tuition charged" for its students who attend approved independent schools, up to the State's average announced tuition rate. 16 V.S.A. § 824.

45.     "Approved independent schools" are private schools that meet certain educational quality and curriculum requirements established by the Vermont State Board of Education.

46.     Approved independent schools meet the State of Vermont's requirements for courses of study, facilities, financial capacity, and faculty training and experience.

47.     Approved independent schools are eligible to receive local district tuition payments. 16 V.S.A. § 828.

48.     The approved independent school designation is conferred by the State Board of Education and recognized by the Vermont Agency of Education.

49.     The average tuition rate announced for Vermont high school students for the 2021–22 school year is $16,842.

50.     Typically, a sending town will pay tuition directly to any public or private school that parents choose for their students on behalf of that student. *See* 16 V.S.A. § 828.

51.     Barstow School Board and Rutland Northeast Supervisory Union regularly pay tuition for a private school that student's parents choose.

52.     Participating approved independent schools charge different tuition rates to families who receive town tuition benefits and families who do not.

7

## 2. Vermont Excludes Religious Schools

53.     For many years, Vermont banned religious schools from receiving town tuition funds based on concerns about the Establishment Clause of the First Amendment to the United States Constitution.

54.     The Vermont Supreme Court eventually determined that the Establishment Clause posed no barrier to religious schools' participation in the Town Tuition Program. *Campbell v. Manchester Bd. of Sch. Dirs.*, 641 A.2d 352 (1994).

55.     Sending towns briefly paid for tuition to religious schools, including Catholic parochial schools, after *Campbell.*

56.     The Chittenden Town school district, for example, authorized payments for students who attended MSJ.

57.     The Vermont Department of Education, however, determined that the Chittenden Town school board's tuition payments for students attending religious schools violated the Compelled Support Clause of Vermont's state constitution, Vt. Const. ch. I, art. 3, and revoked the school district's state aid.

58.     The Vermont Department of Education has since been renamed the Vermont Agency of Education, which Defendant French oversees.

59.     The relevant portion of Vermont's Compelled Support Clause, Vt. Const. ch. I, art. 3, states:

no person ought to, or of right can be compelled to attend any religious worship, or erect or support any place of worship, or maintain any minister, contrary to the dictates of conscience, nor can any person be justly deprived or abridged of any civil right as a citizen, on account of religious sentiments, or peculia[r] mode of religious worship; and that no authority can, or ought to be vested in, or assumed by, any power whatever, that shall in any case interfere with, or in any manner control the rights of conscience, in the free exercise of religious worship.

60.     The school district sued the Vermont Department of Education, seeking to reestablish state aid.

8

61.     Ultimately, the Vermont Supreme Court held that "a school district violates Chapter I, Article 3 [of the Vermont Constitution] when it reimburses tuition for a sectarian school under § 822 in the absence of adequate safeguards against the use of such funds for religious worship." *Chittenden Town Sch. Dist. v. Dept. of Education*, 738 A.2d 539, 541–42 (Vt. 1999).

62.     But Defendants never issued any "adequate safeguards" or changed the Town Tuition Program after *Chittenden* to allow religious schools to participate on an equal basis with secular private schools.

63.     As a result, students had to choose a secular private school or a public school in a different district if they want to participate in the Town Tuition Program.

64.     But in 2017, the United States Supreme Court decided *Trinity Lutheran Church of Columbia, Inc. v. Comer*, putting government officials on notice that they cannot exclude religious schools from neutral public benefits.

65.     Three years later, the Court decided *Espinoza v. Montana Department of Revenue* and held that denying public benefits because of religion violates the First Amendment's Free Exercise Clause because it unconstitutionally forces families to choose between exercising their religion or enjoying a public benefit.

66.     Rather than permit religious schools to participate in the Town Tuition Program, however, Defendant French and the Agency of Education doubled down and informed local school districts that *Espinoza* did not apply to Vermont.

67.     Even after the *Espinoza* decision, Defendant French and the Agency instructed school districts that tuition could not be paid to religious or parochial schools.

68.     Defendant French and the Agency provided this direction in response to school districts' requests for legal guidance.

9

### 3. Defendant French Issues Anti-Religious Tuition Policy

69.     In response to lawsuits challenging the program, Defendant French and the Agency of Education promulgated an "adequate safeguards" tuition payment policy on January 14, 2021.

70.     A copy of Defendant French's policy is attached as Exhibit A.

71.     Citing *Chittenden*, Defendant French and the Agency of Education informed local school districts that they should either make religious schools agree to restrictions on the tuition they receive or reduce families' tuition benefit to account for the religion in a private religious school's programming.

72.     Because Defendant French's duties include supervising and directing the execution of the laws relating to the public schools and ensuring compliance, 16 V.S.A. § 212, the Agency of Education may penalize local school districts that pay Town Tuition Program funds in a manner inconsistent with the Agency of Education's interpretation of Vermont law and has done so to Chittenden's school district in the past.

73.     After the Second Circuit issued its order in *In re A.H.,* Defendant French and the Agency of Education rescinded the January 14 policy but explained that they would re-issue guidance after the ongoing litigation concluded.

74.     A copy of Defendant French's temporary policy recission is included in Exhibit A.

### 4. Local School Districts Adopt Defendant French's Anti-Religion Guidelines.

75.     School districts began to enforce the policy in the spring of 2021.

76.     Upon information and belief, Barstow School Board adopted the policy in the spring of 2021 in executive session and without public comment, public deliberations, or a public vote.

10

77.     The policy requires school districts to collect information on private religious schools' religious activity and to reduce or deny tuition benefits to account for religious schools' "religious worship" or "religious education."

78.     Defendant French's policy does not define "religious worship" or "religious education."

79.     Defendant French's policy does not define "secular" and "non-secular" programming.

80.     Defendant French's policy does not provide administrators or officials with guidance on how to determine whether a school is engaged in "religious worship," "religious education," "secular" programming, or "non-secular" programming.

81.     Defendants do not know how to quantify the "secular" and "non-secular" aspects of a private religious school's programming, especially for schools with curricula taught from a Catholic or Christian perspective.

82.     Defendants have provided no guidance to private religious schools on how they expect religious schools to quantify their "secular" and "non-secular" programming.

83.     The policy provides no direction on how to handle tuition requests from schools that approach each subject from a Catholic or Christian perspective.

84.     The policy provides no direction on how to treat tuition requests for schools where the faith is intertwined with every aspect of their program.

85.     Other school boards have recently refused to grant Town Tuition Program requests for students at religious schools or enforced the policy to restrict access to tuition funds for students at private religious schools.

86.     Defendant French and the Agency of Education have directed, encouraged, and advised local school districts to employ the policy.

11

87.     Defendant French and the Agency of Education permit school districts to continue to employ the policy for tuition funding determinations.

88.     Defendant French and the Agency of Education have never corrected the local school districts who are unconstitutionally depriving families of a neutral benefit based on religious discrimination.

89.     Defendants Barstow School Board and Collins ("the School Defendants") unconstitutionally denied and refuse to honor the Williams' 2020–21 tuition request just because Mt. St. Joseph Academy is religious.

90.     The School Defendants intend to implement the unconstitutional "adequate safeguards" requirement in the future.

91.     The School Defendants refuse to fully honor tuition requests from families whose children attend religious schools and have refused to grant Plaintiffs' requests as required by Vermont law.

92.     The School Defendants only provide a partial tuition benefit to account for "scholarships" that they assume MSJ provides.

93.     The School Defendants did not apply a similar "scholarship" deduction of tuition benefits for tuition requests to secular private schools.

94.     The School Defendants did not request scholarship information from independent schools before religious schools began participating in the Program.

95.     The Agency of Education and Defendant French know that school districts refuse to fully honor tuition requests from families whose children attend religious schools and have directed that they do so.

## B. The Plaintiffs

### 1. The Williams Family

96.     Plaintiffs Joseph and Heather Williams are the parents of Plaintiffs E.W. and J.W.

12

97. The Williams family resides in the town of Chittenden, Vermont.

98. Chittenden is part of the Barstow Unified Union School District ("Barstow") and Rutland Northeast Supervisory Union.

99. The Williamses pay property taxes that fund Barstow and Rutland Northeast Supervisory Union ("RNESU").

100. Barstow does not have a public high school.

101. Barstow therefore provides tuition for its resident students to attend other high schools under 16 V.S.A. §§ 822–28.

102. As Barstow residents, the Williamses are eligible to participate in the Town Tuition Program for the 2021–22 school year.

103. As Barstow residents, the Williamses were eligible to participate in the Town Tuition Program for the 2020–21 school year.

104. Plaintiff E.W. is a sophomore at MSJ.

105. Plaintiff J.W. is a senior at MSJ.

106. The Williamses' oldest child, now a cadet at the United States Coast Guard Academy, is an MSJ graduate.

107. Joseph and Heather Williams want to send their two youngest children to MSJ, too.

108. The Williamses choose MSJ for their children because of the academic challenge, supportive community, individual attention, and integration of faith and learning the school provides.

109. Joseph and Heather Williams and their children are Catholic.

110. In accordance with their Catholic faith, the Williamses believe that their faith is integral to every aspect of life.

111. Joseph and Heather Williams exercise their faith by sending their children to MSJ.

112. E.W. and J.W. exercise their faith by attending MSJ.

113. The Williamses paid $12,000 out-of-pocket for J.W. and E.W. to attend MSJ in the 2020–21 school year.

114. If the Williams children attended a secular high school, Barstow Unified Union School District would pay all of their high school tuition up to the announced average rate.

115. The only reason the Williamses cannot obtain Town Tuition Program benefits for their children's education at Mount St. Joseph is because of MSJ's religious status and activities.

116. Because their school district refused to provide their tuition benefit, the Williamses paid their children's MSJ tuition out of pocket.

117. The Williamses make sacrifices to fund J.W. and E.W.'s MSJ education.

118. Because the Williamses pay their children's MSJ tuition out-of-pocket, they cannot provide as much help to their five children for college as they want.

119. Along with the Williamses' other children, E.W. and J.W. understand that their parents are limited in the financial help they can provide for college.

120. The Williamses oldest child limited the colleges he would consider because he knew that financial help from his parents was limited.

121. J.W. will start college in the fall of 2022 and is looking at potential colleges right now.

122. J.W. will soon have to decide which college to attend, with a May 1, 2022, admissions deadline approaching fast.

123. Because his parents can only provide limited help, J.W.'s consideration of certain colleges is impacted by their affordability.

124. J.W. would have the option of attending additional colleges if he had additional help from his parents.

125. If the Williamses had tuition covered under the Town Tuition Program, they could provide J.W. and their other children more financial help with college.

14

126.    The Williamses are therefore losing out on unrecoverable educational opportunities because they cannot fully participate in the Town Tuition Program.

**2. MSJ.**

127.    The Roman Catholic Diocese of Burlington is the Catholic Church in Vermont.

128.    The Diocese operates several schools as part of the educational mission of the Catholic Church in Vermont.

129.    Catholic schools educate students in all subjects, including religion, in an environment of faith.

130.    Mount St. Joseph Academy ("MSJ") is a college preparatory high school owned and operated by the Plaintiff Diocese.

131.    The Diocese exercises its religion by operating MSJ and its other schools.

132.    MSJ loses opportunities to fulfill its mission every time a student cannot attend the school because of Town Tuition reductions or ineligibility.

133.    The Vermont State Board of Education and Agency of Education recognize MSJ as an approved independent school.

134.    The Catholic faith and its values are woven into every aspect of life at MSJ, including throughout its curriculum and courses.

135.    MSJ cannot isolate or quantify the religious quantity of the education it offers because faith permeates its environment.

136.    MSJ is noted for its academic excellence.

137.    MSJ offers nine Advanced Placement courses and 10 honors courses.

138.    MSJ offers course opportunities in the fine and performing arts.

139.    MSJ partners with the Stafford Technical Center in Rutland to offer students 15 programs, many of which permit students to earn college credits.

140.   MSJ is also known for its excellent athletic programs.

141.   Although MSJ is a Catholic school, its student body includes students from other faith backgrounds—including non-Christian faiths—and students who do not hold or exercise a religious faith.

142.   Many families choose to send their students to MSJ even though they are not Catholic or do not share its religious beliefs.

143.   MSJ's current student body of 83 includes 78 students from 21 Vermont towns.

144.   MSJ's students come from families of all economic backgrounds.

145.   It costs MSJ $16,233 per year to educate each student.

146.   MSJ's unsubsidized tuition rate is currently $16,233.

147.   However, because diocesan schools have faced more than two decades of exclusion from the Town Tuition Program, MSJ has deemed it necessary to provide a subsidy to help families who pay their tuition out-of-pocket.

148.   MSJ provides this subsidy because many families cannot afford to pay the full unsubsidized tuition cost out-of-pocket.

149.   Exclusion from the Town Tuition Program has meant that MSJ families from sending towns must pay their tuition out of pocket, unlike their neighbors who choose secular private schools or public schools for their children.

150.   Without access to the Program, MSJ felt that it had to provide significant tuition subsidies to make MSJ more competitive with secular private schools that receive town tuition funds for their full tuition.

151.   As a result of Catholic charitable subsidies, most MSJ families who pay out-of-pocket will not pay more than $6,500 per child in tuition.

152.   MSJ families are also expected to participate in school fundraising activities to help make ends meet.

153.   MSJ provides additional need-based financial aid to families who cannot afford the subsidized amount to make their children's attendance possible.

154.   MSJ does not intend to provide tuition subsidies to families who do not pay their tuition out-of-pocket, including families who receive Town Tuition funds.

155.   MSJ's financial aid and subsidies are made possible thanks to generous support from the Diocese, local parishes, alumni, friends, and local businesses.

156.   MSJ would be able to provide more students with tuition assistance if they were able to receive program funds.

157.   When districts like Barstow and RNESU refuse to fully honor their statutory tuition obligations, MSJ cannot provide tuition assistance and other ministry opportunities to other students who are not from sending towns.

158.   More families from sending towns would send their students to diocesan schools if they could fully access Town Tuition Program funds.

159.   Families have a disincentive to send their children to MSJ because of the uncertainty regarding access to Town Tuition Program benefits.

160.   If MSJ were not religious, its families would be eligible to receive full tuition payments.

161.   Exclusion from the Program puts MSJ at a significant competitive disadvantage against other independent schools.

162.   Other independent schools advertise their participation in the program on their websites.

163.   MSJ loses ministry and educational opportunities when families choose other schools instead of religious schools due to restrictions on Town Tuition Program benefits.

164.   By conditioning MSJ students' tuition benefits on whether the school's programming and activities are "religious" or "sectarian," Defendants are forcing

17

MSJ to choose between fulfilling its purpose as an independent religious school and participating in the Town Tuition Program.

165.    After the U.S. Court of Appeals' ruling in *In re A.H.*, some school districts began to provide MSJ families access to the Town Tuition Program.

166.    With access to the Town Tuition Program, more families decided to send their children to MSJ.

167.    MSJ's freshman class is its largest in nine years.

168.    Other diocesan schools have experienced a similar increase in enrollment since the Second Circuit's *In re A.H.* decision.

## C. The Williams Family's Requests for Tuition Reimbursement

169.    On June 30, 2020, the United States Supreme Court issued its opinion in *Espinoza*, reminding government officials that States cannot deny students public education benefits because their school is religious.

170.    After Heather Williams learned about the decision, she wrote to her school district superintendent, Defendant Jeanné Collins, on July 26 and informed her that the Court ruled that "A state need not subsidize private education, but once a state decides to do so, it cannot disqualify some private schools solely because they are religious."

171.    Heather Williams told Defendant Collins that she wanted the school district to provide tuition for her children who attended MSJ.

172.    Defendant Collins responded to and denied Heather Williams' tuition request because the district "cannot yet allow public funds go to a private religious school."

173.    Defendant Collins explained that the denial was required because "the state does not allow it and the school board cannot override that."

174. Defendant Collins said she "asked" Defendant French's "Deputy Secretary of Education about it."

175. According to Defendant Collins, Defendant French's Deputy Secretary "verbally told [her] VT is not bound by that decision."

176. A copy of Defendant Collins' correspondence with Heather Williams denying the tuition request is included in Exhibit B attached to this Complaint.

177. Upon information and belief, Defendant Collins was referring to Vermont Agency of Education Deputy Secretary Heather Bouchey.

178. Defendant French and the Agency of Education directed school districts to disregard the *Espinoza* ruling and continue denying tuition because of religion.

179. On February 3, 2021, the United States Second Circuit Court of Appeals issued a writ of mandamus that ordered the District Court to enjoin Defendant French and multiple school districts from denying requests for tuition reimbursement to another diocesan high school because of its religious status, affiliation, or activities.

180. On April 26, 2021, MSJ invoiced Rutland Northeast Supervisory Union for J.W. and E.W.'s tuition.

181. At its May 17, 2021, meeting, the Barstow School Board went into closed session with Defendant Collins where they discussed "Religious School Tuition."

182. A copy of the school board's meeting minutes is attached to this Complaint as Exhibit C.

183. On June 2, 2021, the Second Circuit issued an opinion explaining the reasons that it issued its February 3 writ of mandamus, including that the District Court erred by not providing plaintiffs relief after finding that their rights had been violated.

184. Heather Williams contacted Defendant Collins on June 9 to inquire when her tuition requests would be honored.

185.    Defendant Collins responded that the Barstow School Board would not consider her request for reimbursement for the 2020–21 school year.

186.    Defendant Collins also further advised Heather that if she submitted a tuition bill for the upcoming semester, the School Board would consider providing a tuition benefit that subtracted any amounts for scholarships, awards, and religious education.

187.    On June 14, the Barstow School Board again met and went into closed session with Defendant Collins to discuss "Equity."

188.    Two days later, Superintendent Collins sent a letter to Heather Williams confirming receipt of the invoices.

189.    Echoing the original guidance promulgated by Defendant French and the Agency of Education, Superintendent Collins and the Barstow School Board announced that MSJ must submit a "certification" providing information about the breakdown of secular and non-secular programming so that the School Board could determine the tuition amount.

190.    Superintendent Collins explained, "The District will make payments of tuition minus any amounts . . . which are determined to be allocated towards the promotion of religious worship or education."

191.    Superintendent Collins admitted that neither she nor the Board knew how to apply the adequate safeguards policy to determine whether a school was engaged in secular or non-secular programming.

192.    Defendant Collins stated that it was "impossible" for her or the School Board to evaluate the "adequate safeguards" required for private religious schools such as MSJ.

193.    Defendant Collins stated that she and the School Board will continue to deny students at MSJ and other private religious schools full access to tuition funds because of those schools' religious exercise.

194.   On August 24, 2021, the Barstow School Board announced on its Facebook page that it would hold a virtual forum to discuss "refin[ing] Barstow School Choice options." The post explained that the district would eliminate school choice for private schools to help make the district make school choice more "equitable."

195.   The proposed policy change eliminating school choice caused a public backlash, with many members of public objecting to the policy change and suggesting that the proposed policy change was veiled discrimination against religious schools and MSJ specifically.

196.   A copy of the School Board's Facebook post and accompanying comments, as well as a flyer describing the forum, are attached to this Complaint as Exhibit D.

197.   On September 3, 2021, MSJ Principal Michael Alexander wrote to Defendant Collins and informed her that requiring certifications from religious schools for tuition requests was contrary to recent case law in Vermont.

198.   At the September 9, 2021, virtual forum, members of the public widely objected to the proposed "equity" changes to Barstow's school choice policy.

199.   The district ultimately declined to change the policy after public backlash.

200.   On September 15, 2021, Heather Williams sent the RNESU business manager, Brenda Fleming, copies of the 2021–22 MSJ invoices for J.W. and E.W.'s tuition.

201.   On October 7, 2021, Fleming wrote to Williamses to express that (1) the district would not pay the amount of tuition invoiced by MSJ, (2) the district would instead provide a partial tuition benefit for E.W. and J.W.'s 2021–22 tuition, and (3) the district may seek a refund if a court ruling allows it to do so.

202.   On October 15, Heather Williams wrote to Brenda Fleming, again requesting the wrongfully denied 2020–21 MSJ tuition for E.W. and J.W.

203.    On November 11, 2021, Brenda Fleming confirmed that the district
would not honor the Williamses' 2020–21 tuition request.

204.    Copies of Heather Williams' correspondence with the district and the
MSJ Tuition invoices are attached to this complaint as Exhibit B.

205.    Because Defendants are only providing a partial benefit which is subject
to a claw back, the Williamses do not know whether they will ultimately have to pay
for E.W. and J.W.'s 2021–22 tuition.

206.    Copies of the school district's budget show that Defendants do not intend
to pay the full tuition rate to MSJ going forward.

## STATEMENT OF LAW

207.    At all times relevant to this Complaint, all the acts of Defendants, their
officers, agents, servants, employees, or persons acting at their behest or direction,
were done and are continuing to be done under the color or pretense of state law.

208.    Defendants knew or should have known that they were and are violating
the constitutional rights of students, their parents, and religious schools by:

- Penalizing religious exercise and speech by conditioning a public
benefit—tuition—on a religious private school's religious status,
activities, and speech;

- Denying full access to the tuition benefit unless a private religious
school refrains from its religious activities and speech;

- Granting local school districts and state officials unbridled
discretion to deny benefits to families choosing religious schools;

- Granting local school district and state officials unbridled
discretion to individually assess the religious activities and
speech of private religious schools and deny public benefits based
on those assessments;

22

- Failing to define "religious exercise," "religious worship," "secular," and "non-secular" while enacting a policy penalizing families for the "religious" or "sectarian" activities and speech of their children's school.

209. Defendants knew or should have known that they violate the Free Exercise Clause of the First Amendment by denying families' equal access to public benefits based on their children's schools' religious status and activities.

210. Defendants knew or should have known that they violate the Free Speech Clause of the First Amendment by denying public benefits to religious entities based on the religious speech that they engage in.

211. Defendants knew or should have known that they were and are violating the Establishment Clause of the First Amendment to the United States Constitution by promulgating and enforcing a policy that entangles government officials in religion and favors some religious entities over others based on their beliefs and activities.

212. Defendants' religious discrimination is ongoing.

213. Plaintiffs are suffering irreparable harm from Defendants' religious discrimination.

214. Plaintiffs have no adequate or speedy remedy at law to correct or redress the deprivation of their rights by Defendants.

215. Defendants' actions and policies, as set forth above, do not serve any legitimate or compelling state interest, are not neutral, are not generally applicable, and are not narrowly tailored to serve any such interests.

216. Defendants have deprived, and continue to deprive, Plaintiffs of their clearly established rights under the United States Constitution, as set forth in the causes of action below.

217. Unless Defendants' policies and conduct are enjoined, Plaintiffs will continue to suffer irreparable injury.

23

218.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to appropriate relief invalidating Defendants' challenged policies and related conduct. Additionally, Plaintiffs are entitled to nominal, compensatory, and any other damages to be determined by the evidence and the Court and the reasonable costs of this lawsuit, including their reasonable attorney's fees.

## COUNT I:
### VIOLATION OF PLAINTIFFS' FIRST AMENDMENT
### FREE EXERCISE RIGHTS

219.    Plaintiffs repeat and reallege each allegation in ¶¶ 1–218 of this Complaint.

220.    Based on the allegations set forth above, Defendants deprived Plaintiffs of their right to free exercise of religion in violation of the First Amendment as applied to the states, their officials, and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

221.    Defendants denied the Williamses tuition funds simply because they choose to send their children to a religious school.

222.    Defendants' denial based on MSJ's religious status, speech, and activities forces the Williamses to choose between exercising their Catholic faith by forming their children through a Catholic education on one hand and receiving a public benefit they are entitled to on the other.

223.    Defendants penalize the Williamses' religious exercise by conditioning their equal access to a public benefit on the religious status, activities, and speech of their children's school.

224.    If the Williams' children attended a secular private school, Defendants would grant in full the Williams' tuition requests.

225.    Defendants, by denying the Williamses equal access to a public benefit simply because they desire to use that benefit at a school that educates students from

24

a Catholic perspective, violated the Williams' right to freely exercise their religion as guaranteed by the First Amendment to the United States Constitution and incorporated against the States and state officials through the Fourteenth Amendment.

226.   If MSJ were a secular private school, Defendants would fully pay or reimburse tuition for Chittenden residents who attend MSJ.

227.   Only if MSJ completely ceased its religious activities would Defendants fully pay or reimburse tuition for Chittenden residents who attend MSJ.

228.   Defendants refuse to pay or reimburse tuition in full at religious private schools solely based on religious status, speech, and activities.

229.   Defendants do not restrict tuition funds, for instance, for secular private schools.

230.   But Defendants penalize religious private schools by reducing families' tuition benefits.

231.   Defendants unconstitutionally target religious activity and speech for disfavored treatment.

232.   Defendant French's adequate safeguards policy directs school districts to target religious activity, speech, and exercise for disfavored treatment.

233.   The School Defendants' proposal to eliminate school choice demonstrates impermissible hostility toward religion.

234.   Defendants' exclusion demonstrates impermissible hostility towards religion.

235.   Defendants recognize that MSJ is an approved independent school that meets Vermont's statutory requirements to participate in the Town Tuition Program.

236.   Defendants penalize students, their families, and religious schools for exercising faith by denying them equal access to a neutral benefit.

237. Defendants adopt rules, policies, and procedures designed to prevent religious private schools from equally participating in the Town Tuition Program.

238. Defendants disadvantage MSJ against its secular competitors by refusing to allow its students equal access to a public benefit.

239. Defendants' denial of funding to MSJ based solely on its religious status, activities, and speech is not narrowly tailored to advance a compelling governmental interest.

240. Defendants have no legitimate interest in enacting a greater separation of Church and State than is provided by the Establishment Clause of the First Amendment to the United States Constitution.

241. Given that States have no legitimate or compelling interest in providing a greater separation of Church and State than is provided by the Establishment Clause, Defendants' exclusion of religious schools from the Town Tuition Program can only be explained by an irrational animus against, hostility toward, and targeting of religion.

242. Defendants—by denying MSJ's students and their parents equal access to a public benefit simply because they exercise their religion and seek to use that benefit at a religious school—violate the students' and parents' religious free exercise rights, as guaranteed by the First Amendment to the United States Constitution and incorporated against the States and state officials through the Fourteenth Amendment.

243. Defendants deny the Diocese equal access to a public benefit solely because of its schools' religious status, activities, and speech. The Diocese loses invaluable ministry opportunities with each student who cannot attend its schools, including MSJ, because of Town Tuition Program ineligibility. This violates the Diocese's religious free exercise rights, as guaranteed by the First Amendment to the

26

United States Constitution and incorporated against the States and state officials through the Fourteenth Amendment.

244. The Agency of Education and Secretary French, who is responsible for providing the public information and school district policy about educational opportunities in Vermont, publicly communicated that religious schools and their students are ineligible for equal access to Vermont's Town Tuition Program.

245. The Agency of Education and Secretary French, who is responsible for overseeing compliance with education laws and distribution of school funding, directed and advised school districts in sending towns that religious schools and their students are ineligible to participate fully in Vermont's programs, including the Town Tuition Program, thereby leading school districts to deprive the students who attend the Diocese's schools and other religious schools of neutral public benefits.

246. The Agency of Education and Secretary French, who is responsible for ensuring that Vermont school districts comply with the law, have directed and advised school districts to deny religious schools and their students equal access to neutral public benefits, including town tuition benefits, in violation of the Free Exercise Clause of the First Amendment to the United States Constitution.

247. The Agency of Education and Secretary French, who is responsible for overseeing compliance with education laws and distribution of school funding, have instructed local districts to not accommodate equal participation of religious schools and their students in the Town Tuition Program.

248. The Agency of Education and Defendant French, who are responsible for overseeing compliance with education laws and distribution of school funding have promulgated unconstitutional adequate safeguards standards for districts to follow, encouraging districts to deny neutral public benefits based on schools' religious status, speech, and activities.

27

249. The School Defendants violate Plaintiffs' First Amendment rights by adopting and enforcing Defendant French's unconstitutional adequate safeguards policy.

250. The Agency of Education and Defendant French violate Plaintiffs' First Amendment Free Exercise rights by instructing local school districts to limit public funding to religious schools and their students based on those schools' religious activities and speech.

251. Defendant French and the Agency of Education violate Plaintiffs' First Amendment Free Exercise rights by publicly instructing that religious schools that engage in religious activities or speech cannot fully participate in Vermont's public education benefits, which discourages families from sending their children to the Diocese's schools, including MSJ.

252. Defendants' penalty on religious schools' activities and speech chills religious exercise in schools that seek to participate in the Town Tuition Program.

253. The Agency of Education and Defendant French violate Plaintiffs' First Amendment Free Exercise rights by directing unconstitutional religious discrimination and by providing funding to school districts that discriminate.

## COUNT II:
### VIOLATION OF PLAINTIFFS' FIRST AMENDMENT
### FREE SPEECH RIGHTS

254. Plaintiffs repeat and reallege each allegation in ¶¶ 1–218 of this Complaint.

255. Based upon the allegations set forth above, Defendants deprived the Diocese of its right to freedom of speech in violation of the First Amendment as applied to the states, their officials, and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

28

256. The Diocese exercises its rights to free speech and expression through its ministry at its schools, including at MSJ.

257. The Diocese exercises its rights to free speech and expression by communicating its religious beliefs and convictions through its curriculum and programs at its schools, including MSJ.

258. The Diocese's religious speech is constitutionally protected.

259. The Town Tuition Program gives government officials unbridled discretion to penalize schools for religious speech.

260. Defendants exclude the Diocese's schools, including MSJ, from full participation in the Town Tuition Program, which is a content- and viewpoint-based violation of its speech.

261. Defendants exclude the Diocese's schools, including MSJ, from fully participating in the Town Tuition Program because they disfavor the religious content or viewpoint of the Diocese's speech.

262. Defendants do not limit access to the Town Tuition program for approved independent schools that do not engage in religious speech and expression.

263. For instance, Defendants do not limit access to the Town Tuition program for approved independent schools which encourage students to engage in community service or which discuss spiritual development with their students.

264. Defendants limit access to tuition benefits for schools teaching curriculum from a religious, Christian, or Catholic perspective, but not those teaching from a secular perspective.

265. Defendants' deprivation of public benefits from religious schools because of their religious speech chills such speech among other private schools.

266. Defendants' deprivation of public benefits, namely tuition benefits, forces students to attend non-religious schools and hampers the Diocese's ability to communicate its religious message.

267.   Defendants' actions injure the Diocese by causing it to lose students, which harms its mission, and by losing access to funding available to other independent schools.

268.   The Williamses' right to free speech includes a right to hear the Diocese's religious speech, as expressed in its religious schools.

269.   By denying the Williamses their public benefit based on the religious speech in MSJ's curriculum, Defendants place an unconstitutional burden on Plaintiffs' free speech rights.

270.   Defendants place an unconstitutional condition on Plaintiffs' receipt of a neutral public benefit.

## COUNT III:
### VIOLATION OF THE ESTABLISHMENT CLAUSE

271.   Plaintiffs repeat and reallege each allegation in ¶¶ 1–218 of this Complaint.

272.   Based on the allegations above, Defendants' administration of the adequate safeguards requirement allows government officials to favor some religious denominations over others based on the perceived religiosity of their programming or the religious motivation of the curriculum.

273.   The government violates the Establishment Clause when it favors some religious schools over others simply because of the religiosity of their programming.

274.   Based on the allegations set forth above, Defendants excessively entangled themselves with religion in violation of the Establishment Clause of the First Amendment of the United States Constitution as applied to the states, their officials, and their political subdivisions under the Fourteenth Amendment to the United States Constitution.

275.   When employing the adequate safeguards policy, Defendants engage in surveillance of private religious schools' activities.

276.   The adequate safeguards policy requires Defendants to draw conclusions about what it means for students, parents, and religious schools to exercise their religious beliefs when determining whether programming is "religious worship" or "religious education."

277.   Defendants entangle themselves with religion by employing the "adequate safeguards" as developed in Defendant French's policy and thereby violate the Establishment Clause of the First Amendment to the United States Constitution.

## COUNT IV:
### VIOLATION OF PLAINTIFFS' FOURTEENTH AMENDMENT DUE PROCESS RIGHTS

278.   Plaintiffs repeat and reallege each allegation in ¶¶ 1–218 of this Complaint.

279.   The Fourteenth Amendment guarantees Plaintiffs due process of law.

280.   The Fourteenth Amendment bars government officials from enforcing laws based on vague standards.

281.   The government may not restrict access to a neutral public benefit based on standards that cause persons of common intelligence to guess at their meaning and differ as to their application.

282.   Defendants' "adequate safeguards" policy causes persons of common intelligence to guess at its meaning because it does not define "religious worship," "religious education," "secular," and "non-secular."

283.   The adequate safeguards policy does not explain how to measure or quantify religious and non-religious programming.

284.   Schools such as MSJ, which approach every subject from a religious perspective, must guess as to whether their programming qualifies as "secular" or "non-secular" under the adequate safeguards policy.

285.    Schools such as MSJ must guess whether they are engaged in "religious worship" or "religious education."

286.    Defendants' adequate safeguards policy does not give students, parents, and private religious schools fair warning as to what is permitted and prohibited in order to receive tuition funds.

287.    The Fourteenth Amendment also prohibits government officials from exercising unbridled discretion when handling First Amendment rights and requires objective guidelines to direct administrators' decisions.

288.    The government may not restrict access to a neutral public benefit based on standards that permit arbitrary, discriminatory, or overzealous enforcement.

289.    Without objective guidelines, Defendants use subjective judgments to determine whether programming is secular or non-secular.

290.    Without objective guidelines, Defendants use subjective judgments to determine what is religious worship or religious education.

291.    The adequate safeguards policy grants Defendants unbridled discretion to adjudicate between competing claims of whether programing is "religious worship," "religious education," "secular," or "non-secular."

292.    The adequate safeguards policy gives officials unbridled discretion to define "religious worship," "religious education," "secular," or "non-secular."

293.    The adequate safeguards policy lacks objective criteria to guide Defendants' evaluations of when religious schools' programming is "religious worship," "religious education," "secular," or "non-secular."

294.    The adequate safeguards policy requires officials to make subjective judgments about when a school is exercising religion.

295.    Defendants acknowledge that it is "impossible" to distinguish between "secular" and "non-secular" programming under the adequate safeguards policy if a school teaches its curriculum from a religious perspective.

32

296.    The adequate safeguards policy is impermissibly vague and ambiguous. It is incapable of providing meaningful guidance to Defendants and other government officials and forces Plaintiffs to guess as to whether they are even eligible for tuition funds.

297.    The adequate safeguards policy chills religious exercise in schools which seek to participate in the Town Tuition Program.

## PRAYER FOR RELIEF

Plaintiffs pray this court for judgment as follows:

1.    That this Court enter a preliminary and permanent injunction restraining Defendants, their officers, agents, employees, and all others acting in concert with them, from denying Plaintiffs the town tuition benefit based on their religious status, activities, and speech, and to require the payment of such full benefit immediately;

2.    That this Court enter a declaratory judgment declaring that Defendants' denial of religious schools' full participation in the Program violates the First and Fourteenth Amendments of the United States Constitution, as applied to Plaintiffs and other students from sending towns who attend or wish to attend religious schools;

3.    That this Court enter a declaratory judgment declaring that denying students' access to the Town Tuition Program based on the religious status, activities, and speech of their schools violates the First and Fourteenth Amendments of the United States Constitution;

4.    That this Court enter a declaratory judgment declaring that the "adequate safeguards" requirement is unconstitutional;

5.    That this Court enter a declaratory judgment declaring that the "adequate safeguards" requirement policy promulgated by Defendant French is unconstitutional facially and as-applied;

33

6. That this Court issue the requested injunctive relief without a condition of bond or other security being required of Plaintiffs;

7. That this Court award Plaintiffs nominal and compensatory damages;

8. That this Court include $13,000 to reimburse the Williamses for tuition denied for the 2020–21 school year;

9. That this Court include $32,466 for the Williams children's current year 2021–22 tuition;

10. That this Court award Plaintiffs' costs and expenses, including attorney's fees, pursuant to 42 U.S.C. § 1988; and

11. For such other relief as the Court deems just and equitable.

Respectfully submitted this 24th day of February 2022.

Thomas E. McCormick
(VT Bar No. 837)
McCormick, Fitzpatrick, Kasper &
Burchard, P.C.
40 George Street
Burlington, VT 05402
Telephone: (802) 863-3494
Fax: (802) 865-9747
Email: tem@mc-fitz.com

Paul Daniel Schmitt**
(IN Bar No. 34765-49)
Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, D.C. 20001
Telephone: (202) 393-8690
Fax: (202) 393-3622
Email: PSchmitt@ADFlegal.org

Ryan J. Tucker*
(AZ Bar No. 034382)
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
Fax: (480) 444-0028
Email: RTucker@ADFlegal.org

David A. Cortman
(GA Bar No. 188810)
Alliance Defending Freedom
1000 Hurricane Shoals Road NE
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
Fax: (700) 339-6744
Email: DCortman@ADFlegal.org

*Pro Hac Vice application forthcoming*
**Application for admission forthcoming*

*Counsel for Plaintiffs*

**VERIFICATION**

I, Michael Alexander, a citizen of the United States and a resident of the State of Vermont, acting on behalf of the Roman Catholic Diocese of Burlington, Vermont, in my capacity as Principal of Mount St. Joseph Academy, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint for Declaratory and Injunctive Relief and that the statements contained therein are true and correct.

Dated this 24th day of February, 2022, at _Rutland_____, Vermont.


Michael Alexander
Principal, Mount St. Joseph Academy

**VERIFICATION**

I, Heather Williams, a citizen of the United States and a resident of the State of Vermont, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint for Declaratory and Injunctive Relief and that the statements contained therein are true and correct.

Dated this 24th day of February, 2022, at _Chittenden_, Vermont.


Heather Williams